## EMERSON *vs. The inhabitants of the County of* WASHINGTON.

By the clause in the Act of separation, exempting the lands of *Massachusetts* from taxation while the title remains in the Commonwealth, is intended the legal and not the equitable title to such lands.

If a grantee accepts a deed without covenants, he cannot recover back the consideration money, unless there has been fraud, circumvention, or purposed concealment.

Where a county road had been laid out through a township owned by *Massachusetts,* and a tax illegally ordered and assessed thereon, to defray the expense of opening and making the road, and agents were appointed, pursuant to the statute, who contracted with a person to receive the money from the county treasurer and expend it in making the road ; but the contractor, anticipating the ultimate receipt of the money, made the road at his own expense ; after which the land

Emerson *v.* The county of Washington.

was sold at auction by the sheriff, for nonpayment of the tax, and struck off to the contractor, who received a deed accordingly;—it was held that on discovery of the failure of title, the contractor had no remedy against the county; the Court of Sessions having exceeded its jurisdiction in assessing the tax, and the contractor having exceeded his instructions in making the road before the receipt of the funds specially appropriated for that purpose.

THIS was a special action of the case, in *assumpsit*, for the labor, materials and money expended in making a certain road laid out by the Court of Sessions for the county, through the township No. 9, in the fourth range north of *Bingham's Penobscot* purchase, being part of a road leading from the north line of *Baring* to *Lewey's* island, and thence to the *Baskahegan* carrying-place ; with a count for the purchase-money paid for the same township, at a sheriff's sale made under the order of the Court of Sessions for the nonpayment of a tax assessed thereon for making the same road, the assessment being alleged to be illegal and void, the land belonging to the Commonwealth of Massachusetts.

At the trial, which was before *Weston J.* it was proved that at the time of the location of the road, which was in *August,* 1829, part of the township No. 9, had been contracted for with the land agent of *Massachusetts,* it being the Commonwealth's land, by the late Lieut. Governor *Robbins ;* but the contract on his part had not been fully performed, though still in force. The legal title to the land remained in the Commonwealth till *Sept.* 30, 1831, when it was conveyed to *James M. Robbins,* assignee of the administratrix of the original contractor. The road not being opened, the Court of Sessions, in due form of law, at *December* term, 1830, assessed a tax of one thousand and fifty dollars, being six cents to the acre, on the whole township, and appointed the plaintiff an agent to receive the money from the county treasurer, and expend it in making the road. The plaintiff made the road, in anticipation of the receipt of the money ; after which, the tax not being paid, the whole township was legally advertised by the sheriff, and sold by him at public auction ; and was struck off to the plaintiff, he being the highest bidder, and a deed given accordingly.

12

The residue of the township, not included in the contract with Mr. *Robbins*, consisted of a tract of a mile square, said to have been conveyed to *Ebenezer March;* through which a part of the road was laid. Mr. *Robbins*, always after making the contract, exercised the customary acts of ownership over the land, and was actively engaged in advancing the settlement. At the time of the location he consulted with the committee respecting the best mode of locating the road, and expressed no dissent to the location; observing that he should try to sell part of the land to defray the expense of making the road. The evidence of his conduct and declarations, being objected to by the plaintiff, was admitted subject to the opinion of the court. In answer to the defendant's question whether Mr. *Robbins* had not assented to the location of the road, Mr. *Downes*, his agent, testified that Mr. *Robbins* once remarked to him that he did not see how a road could be legally laid out through the township, the fee being in the Commonwealth, but that he should make the road, as his agent advised. He afterwards expressed this intention to Mr. *Vance*, to whose testimony the plaintiff objected. The plaintiff afterwards, being advised that his title was unsound, demanded of the chairman of the county commissioners, and of the county treasurer, a confirmation of the title or repayment of the consideration-money.

Upon this evidence a verdict was taken for the plaintiff by consent, for $1053,50, subject to the opinion of the court. The defendants also moved that the writ be abated for want of legal service, it being served by the sheriff, and not by a coroner; which motion was also referred to the decision of all the Judges.

*Greenleaf*, for the defendants, maintained the legality of the tax, on the ground that the case was not within the provisions of the Act of separation; and also that the equitable title was in Mr. *Robbins*, whose devisee would have been entitled to take it under a general devise of all the real estate of the testator; *Newland on Contr.* 42, 43; *Craig v. Leslie*, 3 *Wheat.* 563. But he argued that if the assessment was illegal, the plaintiff had no remedy against the county, the whole proceedings having been *coram non judice; Joy v. Ox-*

*ford,* 3 *Greenl.* 131 ; *Calais v. Dyer,* 7 *Greenl.* 155 ; and the act of the plaintiff in making the road being officious.

*Allen,* for the plaintiff, contended that no valid assessment could be made upon the land while the legal title remained in the Commonwealth, it being protected by the Act of separation. But the tax being ordered and made by the legally authorized agents of the county, the plaintiff was justified in reposing confidence in their proceedings. *Brown v. Somerset,* 11 *Mass.* 221 ; *Hampden v. Franklin,* 16 *Mass.* 76. The taking of the deed is no extinguishment of the plaintiff's claim, for it conveyed nothing. But if it is, yet the title has failed, and he therefore has a right to recover the consideration-money. *Joy v. Oxford,* 3 *Greenl.* 134. The plaintiff was not bound to look into the proceedings ; he might well presume them correct. The loss ought to be borne by the county, whose agents have produced it. It was not a case where they had no jurisdiction. The location of the road was legal ; and the plaintiff was not a trespasser in proceeding to open it. When this was done and accepted, the county was bound to pay him for making it. The tax only was illegal. But this was merely a mode of reimbursing the county for the expense of opening and making the road ; in no wise affecting the liability of the county to discharge its own contracts. *Hayden v. Madison,* 7 *Greenl.* 76 ; *Abbot v. Hermon, ib.* 118 ; 7 *Pick.* 181 ; 8 *Pick.* 178.

MELLEN C. J. delivered the opinion of the Court, at the ensuing *May* term, in *Cumberland.*

This case presents several questions. One of them in respect to the service of the writ, and the others to the merits of the action ; and some of these appear to be of a novel character. For the present we pass over the question as to the legality of the service, and proceed at once to the examination of the others.

The road or highway, a part of which, and the expense of making it, are the subjects of our consideration in this suit, was laid out by the Court of Sessions of the county of *Washington,* in virtue of the 23d section of *ch.* 118 of the revised statutes, which provides " that

all highways laid out, or hereafter to be laid out through any tracts of land in this State, not comprehended within the bounds of any incorporated town or plantation aforesaid, shall be made passable and convenient for travelling and kept in good repair, by the owners or proprietors of the said tract of land, township or plantation, unless in the judgment of the Court of Sessions for the county in which such lands lie, it may be deemed unreasonable ; in which case the same shall be done at the expense of the county, or partly at the expense of the county, and partly at the expense of the proprietors, as the said court shall order." No objection has been made to the legality of the location ; and by the report of the Judge it appears that the tract of land or township in question, at the time of the location of the road, and of the assessment of the tax to defray the expense of making it, belonged to the Commonwealth of Massachusetts ; though a part of said township had been contracted for, a deed of which was to be given on payment of the purchase money ; but, the payment not having been made, no deed of conveyance had been given by the Commonwealth. Our first inquiry then is whether the assessment was legal or a nullity, according to the foregoing facts. The first condition in the first section of the " act relating to the separation of the District of Maine from Massachusetts proper, and forming the same into a separate and independent state," (which condition and the eight following are incorporated in, and are a part of the constitution of this State) contains the following provision ; " And the lands within the said district, which shall belong to the said Commonwealth, shall be free from taxation, while the title to the said lands remains in the Commonwealth." It is contended by the counsel for the defendants, that the above expression " free from taxation," should and ought to be limited to that annual taxation which is the mode of raising monies for the support of government and defraying county, town and parochial expenses ; and that such must be presumed to have been the understanding and intention of all concerned. But in answer to this objection it is obvious to remark that the language is general and unlimited ; and that had so important a restriction been contemplated, one giving such an

extensive power of taxation to this State, it would have been express-
ed in plain terms, and not left to the office of construction, which is
often doubtful and dangerous in its application.    We cannot permit
ourselves to impose such a restriction on language which has, by
being incorporated in our constitution, become the language of Maine
as well as Massachusetts.    And we think that the other expression
" so long as the title to the said land remains in the Commonwealth,"
was intended to mean the legal title, and not the equitable ; for it
might be perfectly useless to assess and sell lands belonging to the
Commonwealth, to which an individual had such an equitable and
conditional title as exists in the case before us ; the condition might
never be performed ; and, if performed, no legal or equitable process
could compel Massachusetts to execute a deed, conveying the fee.
We are therefore of opinion that the tax in question was illegally
assessed, and that therefore it is void, and, of course, nothing passed
by the officer's sale to the plaintiff.    The action is predicated on
this principle, and thus far the ground he has assumed has been
maintained.

Our next inquiry is, whether the action can be sustained against
the county ; and if so, then on what principles of law. It is said that
the decision in *Joy v. The county of Oxford,* is an authority in point.
Upon examination it will readily be perceived that the case before
us differs in some important particulars from that.    In the first place
*Joy* was not a purchaser, as *Emerson* was, but one of the proprie-
tors of the township who was assessed.    In the next place, the mo-
ney for which the lands had been sold, was actually paid into the
county treasury.    In the next place, *Joy* was considered as having
been compelled to pay the tax, or lose his land ; and that when the
payment was made under such circumstances, he was allowed to
recover the money back again.    The only point in which the two
cases agree, is that in both the assessment and sale were illegal and
void.    *Joy* had no connection with *Abbot's* contract for making the
road.    He claimed nothing, except as a proprietor whose rights had
been invaded by the Court of Sessions, and by means of whose
wrongful acts, the plaintiff had been compelled to pay a sum of mo-

ney into the treasury of the county, where it was held without right. In this action the plaintiff claims to recover on one of two grounds; namely, either as a purchaser of the land sold, and entitled to recover back the money paid, on the principle of the failure of consideration, no title having passed; or else for his services performed in making the road in question. The right to recover on either of these grounds is denied; and especially against the county of *Washington*. The deed given by the officer contains no " covenant of warranty of title or seisin of the land," as it is stated in the report; and it does not appear that it contains any covenants whatever. It seems to be a well settled principle, that if a grantee receives and accepts a deed, containing no covenants, he cannot recover back the consideration on failure of title, unless there has been fraud, circumvention or purposed concealment. This is recognised and declared to be the law, in the case of *Joyce v. Ryan, ex'r.* 4 *Greenl.* 101. Numerous authorities might be cited to the same point, if necessary. Besides, if the deed does contain any implied covenants, or any express ones as to the legality of the assessment, still, an action of assumpsit would not be the remedy for the recovery of damages for the loss of the title, but an action of covenant broken. It is said by the counsel for the plaintiff that the officer was not bound to give a deed containing covenants. This is true; nor is any grantor obliged to enter into any covenants with his grantee; but it is equally true, that no man is bound to purchase and receive a deed without covenants on which he may claim damages upon failure of title. This argument, therefore, cannot be considered as a meritorious one. Parties are at liberty to make their contracts as they please, provided they are lawful. As the plaintiff cannot recover on the ground of his having paid the consideration named in the deed, and the loss of his expected title, the next question is whether he can recover for his services in making the road, upon an implied assumpsit. The answer to this question must depend upon the circumstances attending the transaction. It is not pretended that the plaintiff has ever actually paid any money into the county treasury; has he in legal contemplation done it, by making the road at his own expense,

in anticipation of the payment of the tax over to him by the treas-urer? By the terms of the plaintiff's agency he was to expend the money in making the road, after he had received it from the treas-urer. The Court of Sessions, certainly, never intended that the county should ever be made liable for the expense of making the road, but that it should be made by the expenditure of the tax col-lected from the owner or owners of the township. Such was the express order of the Court; and the sale was predicated on the non-compliance with that order. Under these circumstances is a pro-mise of payment by the county implied? The general rule of law is plain that where there is an express promise, there is no implied one. If the court are to be considered as the agents of the county, as they certainly are to some purposes, such as are mentioned in the case of *The county of Hampshire v. The county of Franklin,* then their contract with, and direction to the plaintiff, was to make the road with the money collected from the owner of the township. How then can the law imply a promise by the county, expressly contradictory to the explicit instructions given by the court? There does not appear to be a single fact in the case from which such an implication can arise; and, on the contrary, such an implication would be directly against law. It seems a solecism to say that the law will ever imply a promise against law. The 23d *sec.* of *ch.* 118, part of which we quoted in the begining of this opinion, declares how the expense of making such a road as the one in question shall be borne; and the Court of Sessions when they located the road, ordered that it should be borne by the owners of the plantation. Such is the law in all similar cases, unless a different order is pass-ed by the Court, subjecting the county to bear all or a portion of the expense. The case of *Brown v. The county of Somerset,* cit-ed by the counsel for the plaintiff, was founded on certain orders drawn on the county treasurer by the committee appointed to make a road through certain unincorporated lands in that county, and which the treasurer refused to pay. The case is barren of facts; but as the orders were drawn on the treasurer, the presumption is that the assessment was legal and that the tax had been collected

and paid into the treasury. However this may be, the cause was decided on points having no connexion with the question of liability on the part of the county, except of a formal character, touching the power of the committee under their appointment by the Court of Common Pleas, instead of the Court of Sessions. We have thus far examined the cause, principally in reference to the inquiry, whether the plaintiff has a right of action against any one; the remaining inquiry has respect to the question of the liability of the county to the payment of damages to the plaintiff; and as to this point, we have in some measure anticipated it in our preceding examination. As has been before observed, there are certain subjects in relation to the financial concerns of a county, as to which the Court of Sessions are to be considered as the agents of the county, and empowered to bind the county by their official acts, in the lawful exercise of their powers. These are correctly stated by the court in the case of *The county of Hampshire v. The county of Franklin.* In the same manner, selectmen and overseers of the poor have certain powers in respect to the prudential concerns of their town, by the exercise of which they may bind the town ; but in all these cases, the court, or such officers must act within the limits of their jurisdiction. If the Court of Sessions, while such court existed, had laid out a road without the limits of their county, it would have been a perfect nullity ; so if assessors should assess the polls and estate of persons within the limits of another town. In the case of *Joy v. The county of Oxford,* before mentioned, this court decided that the assessment was perfectly void; *Joy's* property not being liable to the assessment. So we have already decided that the assessment in the case before us is a perfect nullity, because the lands taxed were not by law liable to taxation. The Court of Sessions acted beyond the limits of their jurisdiction. Why then should the county be bound by their act? By the first section of the act of 1826, *ch.* 337, it is declared that assessors shall not be made responsible for the assessment of any tax which by law they are required to assess, but the liability shall rest solely with the town ; and the assessors shall be responsible only for their own per-

Emerson *v.* The county of Washington.

sonal faithfulness and integrity.    The spirit of this provision is, that those who occasion the wrong should be answerable for its consequences.    In the present case, the act of the·Court of Sessions has occasioned the wrong and the damage, and why should the county be held responsible for it?    Whether the character of the act of assessment was such as to protect the court from responsibility, is a question as to which, in this cause, we are not called on to intimate an opinion; though we have no idea such an action could be maintained.    It is said that the county has accepted the road by the public use of it.    There is no evidence in the case which shows any use by the county, more than by the towns in the county and the plantation No. 9.    No inference can be drawn from this alleged user.    The cases of *Hayden v. Madison,* and *Abbot v. Hermon* are not applicable to the case at bar.    In the former there was evidence of an acceptance of the road on the part of the town, though the road was not completed; or at least, of a waiver of objections on account of its non completion; and in the latter case there was a similar waiver of a similar objection, by an appropriation of the school house, under the authority of the school committee.    The admission of the evidence of the conduct and declarations of *Edward H. Robbins,* is a matter of no importance; nor would the testimony of *Robbins,* had he been living and on the stand, to the same facts, have been in the least degree influential in the cause.    The admission of those declarations, therefore, if it was improper, would furnish no ground for setting aside the verdict, had it been returned in favor of the defendants; but as the jury found for the plaintiff, the verdict must be set aside and a nonsuit entered, for the reasons we have mentioned.    Our decision of the cause on its merits, renders it unnecessary to examine the question as to the regularity of the service of the writ.                              *Plaintiff nonsuit.*